UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FLORENCIO BARRAZA, | Case No. 10-11174 |
| Plaintiff, | Thomas L. Ludington |
| vs. | United States District Judge |
| COMMISSIONER OF | Michael Hluchaniuk |
| SOCIAL SECURITY, | United States Magistrate Judge |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On March 24, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 9, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on January 10, 2006, alleging that he

became unable to work on November 30, 2005.  (Dkt. 6, Tr. at 51).  The claim was

initially disapproved by the Commissioner on March 17, 2006.  (Dkt. 6, Tr. at 44-

47).  Plaintiff requested a hearing and on July 15, 2008, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) James P. Alderisio, who

considered the case *de novo*.  In a decision dated November 8, 2008, the ALJ found

that plaintiff was not disabled.  (Dkt. 6, Tr. at 18-28).  Plaintiff requested a review

of this decision on January 2, 2009.  (Dkt. 6, Tr. at 15).  The ALJ's decision

became the final decision of the Commissioner when, after the review of additional

exhibits[1] (AC-1-4, Dkt. 6, Tr. at 8), the Appeals Council, on January 25, 2010,

denied plaintiff's request for review.  (Dkt. 6, Tr. at 4-8); *Wilson v. Comm'r of Soc.

Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED** and that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**AFFIRMED**.

## II.      FACTUAL BACKGROUND

### A.      ALJ Findings

Plaintiff was forty-eight years of age at the time of the most recent administrative hearing.  (Dkt. 6, Tr. at 51).  Plaintiff's relevant work history included approximately seventeen years as a cement and construction worker.  (Dkt. 6, Tr. at 70, 77).  In denying plaintiff's claims, defendant Commissioner considered a history of neuropathy, cataract blepharitis, rod cone distrophy, degenerative joint disease, chest pain, and obesity as possible bases of disability.  (Dkt. 6, Tr. 23).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since November 30, 2005.  (Dkt. 6, Tr. at 23).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6, Tr. at 24).  At step four, the ALJ found that plaintiff could not perform his previous work as a construction worker and landscaper.  (Dkt. 6, Tr. at 26).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 6, Tr. at 26-27).

B.    Plaintiff's Claims of Error

According to plaintiff, the Appeals Council was provided with new and material medical evidence.  Specifically, an office letter dated March 20, 2009 from Dr. Yaldo indicated that plaintiff has progressive age related macular degeneration and he is totally and permanently disabled due to vision of 20/200 bilaterally.  (Tr. 217).  Dr. Yaldo also indicated that plaintiff is unable to operate machinery or drive.  (Tr. 217).  Dr. Yaldo previously wrote a letter December 16, 2008 indicating visual acuity of 20/200 and 20/100.  (Tr. 218).

The Appeals Council was also provided with a report from Heart Diagnostic Center dated January 3, 2009 showing moderate fixed defect in the posterior-inferior wall with normal wall motion on gated SPECT imaging reflecting attenuation and an ejection fraction of 46%, which is borderline low in limits.  (Tr. 220).  A 24-halter monitor report dated January 5, 2009 documenting periods of sinus bradycardia and tachycardia and St-T abnormalities suggestive of early repolarization.  (Tr. 221)

The Appeals Council was also provided with medical records from Dr. Suleiman documenting the following diagnoses: severe arthritis, bilateral knees; lumbar disc disease; shoulder tendonitis; and elbow tendonitis.  (Tr. 224).  On physical examination, Dr. Suleiman noted plaintiff's knees to have crepitus with varus deformity and positive drop arm test.  (Tr. 224).  Dr. Suleiman administered

a cortisone shot in his left knee and recommended an MRI. (Tr. 224). The MRI of the right knee dated February 17, 2009 showed a complex tear, mid and posterior horns of the medial meniscus with the middle horn basically missing; moderate degenerative changes, medical compartment of the knee with loss of cartilage; an area of osteochondritis dissecans distal anterolateral femur, associated with bone bruising in the tibia and a moderate-sized joint effusion. (Tr. 230). An MRI of the left knee of the same date showed complex tear, medial meniscus, with almost total loss of the middle horn; complete tear, anterior cruciate ligament; moderate-to-severe degenerative changes, medial compartment, with loss of articular cartilage, a small effusion, and probable loose body formation; cystic degenerative changes, insertion of the posterior cruciate into the posterior aspect of the tibia. (Tr. 232). On March 12, 2009, Dr. Suleiman performed an arthroscopic medial and lateral meniscectomy, chondroplasty of all compartments and synovectomy for his diagnoses of: severe arthritis of the left knee with left femoral medial and lateral grade IV chondromalcia; severe tearing of his meniscus both medially and laterally; and extensive synovitis. (Tr. 227). On follow-up on March 27, 2009, Dr. Suleiman recommended a Synvisc injection which was administered bilaterally. (Tr. 225).

   According to plaintiff, the foregoing evidence provided to the Appeals Council was new and not available at the time of the administrative hearing

because plaintiff had not yet received the treatment outlined in this medical documentation from Dr. Yaldo and Dr. Suleiman.  Plaintiff asserts that the medical documentation is material because it shows a change in medical condition in that it provides evidence showing a progression of his numerous severe medical conditions, which plaintiff must have had before the ALJ made his decision.  That is, these conditions did not simply appear in 2009, when they were finally treated.

### C.   Commissioner's Counter-Motion for Summary Judgment

According to the Commissioner, plaintiff has failed to carry his burden of showing that a remand under § 405(g) is warranted.  While the post-decision opinion may be new insofar as it did not exist prior to the administrative proceeding, *Foster*, 279 F.3d at 357 (additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceeding), according to the Commissioner, its age does not equate to good cause for a failure to have presented the evidence earlier.  Rather, the good cause requirement is satisfied if there is a "valid reason" for the failure to submit evidence at a prior hearing.  *Oliver*, 804 F.2d at 966.  Plaintiff does not directly address this good cause requirement and, according to the Commissioner, "this circular argument conflates the requirement that the additional evidence be new with the requirement that a plaintiff have good cause for his failure to submit the additional evidence earlier, and has been rejected in the Sixth Circuit."  *See Oliver*, 804 F.2d at 966

("this circuit has taken a harder line on the good cause test" than simply relying on the age of the evidence).  According to the Commissioner, the date of this evidence shows a lack of good cause because plaintiff did not obtain it until *after* the ALJ's denial.  Specifically, the first visual acuity test that supported plaintiff may have met Listing 2.02 and was performed in December 16, 2008 – approximately one and one-half months after the ALJ issued his decision on November 5, 2008. Plaintiff offers no explanation why he could not have had his vision tested six weeks sooner had he thought he met the Listing.

Additionally, the Commissioner urges the Court to reject plaintiff's argument that the orthopedic records from 2009 "support an earlier onset date" and relate back to a condition at the time of the hearing.  While the medical records (and the ALJ's own findings) corroborate that plaintiff had degenerative joint disease as early as on the alleged onset date, if his condition were as debilitating then as he now suggests, he offers no good reason why he waited until 2009 to see his orthopedist more regularly and, ultimately, to undergo the arthroscopic surgery. Thus, the Commissioner concludes that plaintiff has not shown sufficient good cause to warrant a sentence six remand.

Further, the Commissioner argues that plaintiff has also failed to show that this evidence is material.  Additional evidence is material only if it concerns the plaintiff's condition prior to the ALJ's hearing decision (or the claimant's date last

insured).  *Oliver*, 804 F.2d 964 at 966.  While these medical records concern impairments that existed between the time of the alleged onset date and the hearing, according to the Commissioner, they do not document that these impairments were as severe or debilitating then as they were after the hearing. And, the Commissioner asserts, the prehearing medical records belie any such claim, because pre-hearing visual acuity testing clearly indicated that plaintiff had no worse visual acuity than 20/70 – much better than listing-level severity – and the orthopedic records did not suggest any problems resulting in any physical limitations or restrictions.  Similarly, the plaintiff's own testimony contradicts his claim given that he never mentioned at the hearing that his disability application was predicated on any impairment other than his vision.  (Tr. 234-43). Additionally, he indicated in a function report that his impairments did not affect his ability to perform such activities as walking, standing, sitting, squatting, and bending.  (Tr. 90).  In a disability report plaintiff completed in April 2008, he indicated no other basis of disability other than "loss of vision due to optic neuropathy."  (Tr. 65).  The Commissioner acknowledges that the post-hearing evidence documented the worsening of his impairments, but asserts that evidence of the aggravation or deterioration of a condition is not relevant because it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Serv's.*, 865 F.2d 709, 712 (6th Cir. 1988). The Commissioner

suggests that the appropriate remedy in such a case is to initiate a new claim for benefits alleging an onset date consistent with the aggravation or deterioration of the condition, which is exactly what plaintiff did, and his efforts proved successful. The Agency considered this evidence when it reviewed plaintiff's new application and determined plaintiff became disabled

as of March 1, 2009 – the month plaintiff had arthroscopic surgery.  (Tr. 12, 227-29).  Accordingly, the Commissioner argues that plaintiff is not entitled to a remand under these circumstances.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

Report and Recommendation
Cross-Motions for Summary Judgment
*Barrazza v. Comm'r*; Case No. 10-11174

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   Governing Law

      1.   Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Good Cause Under Sentence Six

Plaintiff's motion for summary judgment relies primarily on the submission of new evidence to the Appeals Council. Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate that this evidence is "new" and "material" and that there is "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "Good cause" is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d

964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed.Appx. 593, 598-99 (6th Cir. 2001). A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r*, 97 Fed.Appx. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r*, 79 Fed.Appx. 852, 859 (6th Cir. 2003). Here, plaintiff has not addressed or carried his burden of demonstrating good cause; he has not addressed why he did not obtain the evidence proffered earlier. The undersigned agrees with the Commissioner that there is no stated reason plaintiff could not have obtained updated vision testing before the ALJ issued his decision if he believed he met the Listing requirements. In addition, plaintiff offers no explanation as to why he did not seek treatment from his orthopedic or cardiac physicians before the ALJ issued his decision. Thus, plaintiff has failed to establish good cause.

Additionally, in order to establish materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Sec. of HHS.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed.Appx. 547, 550 (6th Cir. 2007). In the view of the undersigned, the Commissioner is correct that while these medical records relate to impairments

that existed between the time of the alleged onset date and the hearing, they do not document that these impairments were as severe or debilitating then as they were *after* the hearing. And, the evidence before the ALJ shows that plaintiff's pre-hearing visual acuity testing indicated that plaintiff had no worse visual acuity than 20/70 and the orthopedic records did not suggest any problems resulting in any physical limitations or restrictions. As the Commissioner points out, the plaintiff's own testimony contradicts his claim given that he never mentioned at the hearing that his disability application was predicated on any impairment other than his vision. (Tr. 234-43). Additionally, he indicated in a function report that his impairments did not affect his ability to perform such activities as walking, standing, sitting, squatting, and bending. (Tr. 90). In a disability report plaintiff completed in April 2008, he indicated no other basis of disability other than "loss of vision due to optic neuropathy." (Tr. 65). The Commissioner correctly acknowledges that the post-hearing evidence documented the worsening of his impairments, but the undersigned agrees that the evidence of the aggravation or deterioration of a condition is not relevant because it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Serv's.*, 865 F.2d 709, 712 (6th Cir. 1988).

    D.    <u>Substantial Evidence Supports the ALJ's Decision</u>

Plaintiff also asserts that substantial evidence does not support the ALJ's

decision because the ALJ did not consider his limited ability to speak English and the decision was not otherwise supported by substantial evidence. The ALJ found that plaintiff could perform a range of medium work that did not involve driving, exposure to bright lights or the outdoors, or changes from dark to light or from light to dark. (Tr. 24). The prohibition against driving accommodated plaintiff's lack of a drivers license. The restriction from outdoors or bright lights addresses plaintiff's eye impairments and his testimony that bright lights and the sun blind him. The restriction from moving from light to dark or dark to light similarly accounted for plaintiff's eye condition and accommodates his complaints of reduced night vision. The ALJ's determination that plaintiff's impairments required no additional accommodations is supported by the record evidence that plaintiff retained visual acuity well-above listing-level severity.

While the record reveals that plaintiff's conditions resulted in several limitations, as found by the ALJ, the mere existence of a particular condition is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may

or may not affect his or her functional capacity to do work. One does not

necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations

recognize that individuals who have the same severe impairment may have

different residual functional capacities depending on their other impairments, pain,

and other symptoms."). Moreover, plaintiff does not offer any opinion from a

treating physician that he was more physically limited than as found by the ALJ.

*See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir.

1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of

physical restrictions constitutes substantial evidence for a finding of

non-disability.").

      To the extent that plaintiff points to other subjective limitations, such

subjective evidence is only considered to "the extent [it] can reasonably be

accepted as consistent with the objective medical evidence and other evidence."

*Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20

C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990);

*Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986). Significantly, plaintiff never

testified that any other impairment limited him in any way and did not mention his

degenerative joint disease, or obesity at the hearing. As for his chest pains, he only

verified the ALJ's observation that "[t]he record indicated he had some chest pain

in the past. " (Tr. 242). The mere existence of a history of chest pains does not

seem to be a significant impairment, particularly given plaintiff never claims that these non-ocular conditions were in any way disabling.  In a disability report he completed in April 2008, plaintiff only listed "loss of vision due to optic neuropathy" as the impairment that limited his ability to work.  (Tr. 65).  The ALJ determination that nothing in the treatment record precluded plaintiff from performing a limited range of medium work is supported by the substantial evidence in the record, particularly given that no medical source ever imposed any exertional, postural, or manipulative restrictions on plaintiff.  Plaintiff's own reported activities support the ALJ's determination.  In answer to a physician's questionnaire in August 2005, plaintiff reported that he was very active or regularly exercised and in a function report he completed in January 2006, plaintiff admitted that his impairments did not affect his ability to lift, squat, bend, stand, reach, walk, or sit.  (Tr. 90, 116).  Plaintiff also testified that he returned to work in 2007 and stopped not due to his impairments, but because his employer no longer had work for him.  (Tr. 239-40).

The Commissioner also correctly points out that despite his education and linguistic abilities, plaintiff successfully worked as a cement and construction worker for 17 years.  (Tr. 70, 77).  Again, plaintiff even resumed construction work in 2007, stopping not because of any lack of ability or skill, but because his employer no longer had work for him.  (Tr. 239-41).  The vocational expert

determined that plaintiff's prior work was unskilled and only identified medium

jobs, like dishwasher, consistent with the ALJ's RFC finding. (Tr. 243). The

regulations define unskilled work as work which needs little or no judgment to do

simple duties that can be learned on the job in a short period of time. 20 C.F.R.

§ 404.1568(a). Substantial evidence supports plaintiff's ability to handle such

work, particularly given his long history of having successfully done so and his

return to work in 2007. This is exactly the kind of work the ALJ ultimately

determined plaintiff was able to do. (Tr. 27).

        The Commissioner also correctly points out that the Medical-Vocational

Rules suggest a finding of not disabled despite plaintiff's limited education.

Plaintiff was a younger individual between 18 and 49 years old on the alleged

disability onset date. (Tr. 26). Under 20 CFR 404, Subpt. P, App. 2, plaintiff was

able to perform a range of medium, thus his ability to communicate in English and

his literacy level are not an issue that requires remand.

        Plaintiff also claims that the RFC finding does not accurately reflect his

abilities and limitations because the ALJ wrongly determined that plaintiff did not

credibly testify to the limiting effects of his symptoms and impairments. The ALJ

accredited much of plaintiff's testimony, given that the RFC accommodated his

complaints of blindness in the sun, difficulty seeing in the dark, and inability to

drive. But the ALJ discredited plaintiff's testimony to the extent it was

inconsistent with the medical record evidence. As set forth above, in the view of the undersigned, the substantial record evidence supports the ALJ's determination that plaintiff retained a significant degree of visual acuity. Through the date of the decision, Plaintiff's acuity tested well above the 20/200 threshold of Listing 2.02. Similarly, during this time, no treating physician imposed any functional restrictions based on plaintiff's eye problems. Again, while the medical record evidence documented the existence of plaintiff's other impairments, at least through the time of the ALJ's decision, no record gave any indication that these impairments resulted in any functional limitations that would affect plaintiff's ability to work. Thus, in the view of the undersigned, substantial evidence supports the ALJ's RFC finding.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

                                             s/Michael Hluchaniuk
Date:  March 3, 2011                         Michael Hluchaniuk
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 3, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Norton J. Cohen, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb           

Judicial Assistant

(810) 341-7850

darlene_chubb@mied.uscourts.gov
